Our next case this afternoon is People of the State of Illinois v. Hammett v. Brown 4-24-0836. The appellant, the police agent, name, sir? Dan O'Brien. And for the appellee? James Bradley. Thank you. Mr. O'Brien, on behalf of the appellant, you may proceed, sir. Thank you. I'm Dan O'Brien with the Office of the State Appellate Defender, and I represent the appellant Hammett Brown. This case entails the denial of a petition for leave to file a successive post-convention petition claiming actual innocence. And the Supreme Court has made clear that such a motion should only be denied when it's clear from a review of the petition and the matter of law the petitioner cannot set forth the colorable claim of actual innocence. To establish the colorable claim, Hammett had to provide newly discovered evidence that was non-cumulative, material, and of such a conclusive nature that it would probably change the result on retrial. The state doesn't challenge, and there seems little question that the evidence here is newly discovered, material, and non-cumulative. Hammett and Sidney Mays made it very clear in their statements that Hammett didn't know about Sidney Mays, why he didn't know about Sidney Mays, and that no amount of diligence on Hammett's part or his attorney's part would have procured that evidence. Given a hand-cleaned shelf defense, the fact that Stephen Alexander was armed and threatened him and potentially pulled a firearm is clearly material. It's also not cumulative. The only evidence of this otherwise came from Hammett himself. Thus the case comes down to two questions. First, whether Hammett's supporting evidence is sufficient, and whether that evidence is of such conclusive character that it would probably change the result on retrial. Mays' statement is not notarized and is not sworn, but nevertheless it accomplishes the two purposes meant to be served by the evidentiary requirement in the Post-Conviction Act. As the Illinois Supreme Court noted, the factual basis is sufficient to show that the petition's allegations are capable of objective or independent corroboration, and it must identify with reasonable certainty the source's character and availability of the evidence. Now the court noted that as a practical matter, the question here is whether a defendant should be allowed to consult with an attorney and perfect his claims. This in turn focuses on whether he set forth a constitutional claim and demonstrated that he can support that. Neither verbalization nor language saying that the author swears to the statement has any relevance to this question. The absence of neither of these would render an otherwise valid argument invalid, a frivolous argument non-frivolous, or a colorable argument non-colorable. Again, it focuses on the nature of the evidence, its source character and availability, and whether it corroborates the patent. Mays explains who he is, what he knows, how he knows it, why he wasn't available at the time of trial, and most importantly, he explains how and where he can be found and his willingness to testify under oath. This entirely satisfies the purposes of the petition. Is the importance of Mays' statement that it support a claim of self-defense by the defendant? Yes. Go ahead. So there remains the question of whether this being a motion for leave to file rather than a first stage petition requires a different result. Well to begin with, nothing in Allen and nothing in the statute itself suggests this. Allen makes clear that the appropriate time to subject the evidence to that increased level of scrutiny is the second stage. The standard for motions for leave to file is lower than the second stage. Also, motions for leave to file, like first stage petitions, are likely to be pro se. Moreover, the evidence already has four additional requirements. That the evidence be newly discovered, material, non-cumulative, and conclusive. The state's proposal to introduce a new scheme for actual innocence claims is unsupported by Allen or the statute. The state presents no cases to suggest reading this into the statute. Counsel, can I ask, you talked about it not being cumulative and you mentioned the only other thing was the defendant's testimony. Something can't be cumulative if the defendant has testified about the same thing? I don't necessarily, I wouldn't go that far, but I think that, again, the Willingham case that's cited in my brief addresses this question directly. And the way that they phrase this, give me just a second, is that, the state's proposal to introduce a new scheme for innocence claims, essentially they said, something very close to these words, this statement corroborated the defendant's testimony and conflicted with the state and that makes it non-cumulative. So I think there's, when, again, especially a case like this where the state relied heavily, their argument is just overwhelmingly about the total absence of anything to support Hammett's claim. So I think that the fact that you have something coming from an independent source and not even a, presumably a completely neutral source, yes, in and of itself would make it non-cumulative. But I also think that there are certain aspects of this statement here that even if it only directly corroborated Hammett's statement would still make it non-cumulative because there are certain details. For example, the gun, what happened to the gun. Maze's statement explains exactly what happened to the gun. That's something that Hammett didn't testify about, Hammett couldn't have known about. As to whether or not the evidence is of such a conclusive character, it would probably change the results. The question is whether, taken as true, this evidence would have changed the results of trial. Hammett's defense was that these guys were threatening him and that on this night, Alexander pulled a gun and threatened him, or indicated his intention to do him harm. The statement is heavily on the fact that there is no evidence supporting this self-serving claim. The one piece of evidence having some tendency to support it was the witnesses overhearing the statement, get the gun, get the gun. But this was dismissed as insignificant precisely because there was no evidence that there was another gun. Now we know, for our purposes today, that Alexander was, in fact, harmed, and that he intended to do Hammett harm. Counsel, if I may, as far as the conclusive nature of the written statement, how can that be conclusive if it really doesn't establish the elements of self-defense? He acknowledges he wasn't present, so he can't give an indication of who was the initial aggressor. Could you address those matters? Sure. This goes to the fact that what we're looking at here is probability rather than certainty. So the question is, it doesn't have to be dispositive. It doesn't have to be conclusively exonerating. It doesn't have to demonstrate that Hammett absolutely fired in self-defense. What it needs to do is put the evidence in a different light, and it needs to demonstrate that as to the gun, as to what happened, his testimony was easily dismissed. This takes Hammett's testimony a large part of the way. It shows that a good part of what Hammett said is, in fact, true. It makes his testimony more credible. It discredits the state's testimony, the two witnesses in particular who were standing right there who said there's no gun. Because if, again, we're taking this to be true, there was a gun, and it was in Alexander's hand. So, suddenly, Hammett's claim, rather than just being self-serving and unsupported by any evidence, Hammett's claim is, in large part, proven truthful, and the likelihood that, in fact, he did then shoot because Alexander had a gun is far more likely than it would be without this statement. Does that answer your question? Yes, thank you. Is my understanding correct that in May's written statement, he did not indicate he saw the actual shooting? Correct. He said that he ran into Alexander, that he saw the gun, that he heard Alexander say that he intended to shoot Hammett, and that he and his friends left the party because they were, because the atmosphere was going sour, something to that effect. So he didn't see the shooting itself or the events immediately preceding it? No. Well, the answer would be, yes, he did not. Oh, sorry, yes, he did not. Well, then, how does this establish the conclusiveness that the Supreme Court has said is the most important of these factors when you're evaluating the petition of this kind? Well, again, when taken as true and in connection with the other evidence, Hammett already testified as to a number of previous encounters. The judge found it credible that there were these previous encounters. So you have Hammett being in a state where he already feels threatened by these individuals. We now, again, for purposes of today, know that Alexander was at the party, that he was in possession of a gun, that as of immediately after the shooting, it was in his hand, and that he indicated his intention to shoot Hammett. This, again, it changes the probability of what it does. Frankly, it stands them on their heads. The fact that what Hammett said before, which was, as the state indicated, unsupported and self-serving, that he shot because Alexander had a gun and was going to shoot him, and I believe Hammett's testimony was that Alexander did shoot at some point, but it wasn't entirely clear who fired first. You argue extensively about the Willingham case, that it's important, it's important for your position, but isn't it true that Willingham differs in a significant aspect because the witness in that case, Adams, saw the shooting incident, that issue, while Mays did not? Okay, that would be a factual difference, but I think that, I don't think that it's a dispositive difference, given that, again, that we don't need to have conclusive proof that Alexander shot at Hammett. What we need to know to establish the self-defense is that Hammett had a reasonable and objective belief that he was going to shoot at him and he had to shoot at him in response. By establishing that he was armed, that he had the gun in his hand, and that he, and that minutes earlier, he had indicated his intention to shoot Hammett. This makes Hammett's testimony about what happened incredibly probable. Again, it's not conclusive. It's possible Hammett saw him, Hammett pulled a gun, Alexander pulled the gun in response. We don't necessarily know that, but again, that's not what we're looking here for. We're not looking for absolute, total exoneration, merely that the, I think the phrase that I'm looking for is, that the new evidence places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt. It absolutely does that. There's no way, this requires a different reading of all the evidence. Isn't the fact, is it understandable that the Mays statement would have to be in such a conclusive character, it would probably change the results on retrial? Yes. And the way that I phrase it there, which is taken from Robinson, there are presumably a couple of different ways of saying essentially the same thing. But again, that's with this statement, Hammett Brown's testimony, which was pretty much inconsequential. It was written off for the most part. Hammett Brown's testimony means something now. It is largely proven to be true. The likelihood that the remaining part is true is substantially increased. The phrase, get the gun, get the gun, that was also, that was sort of just shoved aside as who knows what that was referring to, but there's no evidence of another gun anyway, so it doesn't matter. Well, knowing that Alexander in fact had a gun in his hand and then didn't have a gun in his hand afterwards, all of a sudden this person yelling, get the gun, get the gun, takes on a new significance. It's a tune and a clear link of what probably happened here, which is that he did have a gun in his hand and that's one of his friends or somebody took it before the police arrived. I know you mentioned there's several different ways of stating what people versus Robinson stated, but specifically the court said, labor court should be granted where the petitioner supporting documentation raises the probability that it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence. I think that's a little bit different than just saying it makes this scenario more likely to provide credence or weight to the defendant's position. I mean, when we talk about no reasonable juror, that seems a slightly higher standard than what you're suggesting. But I think that that phrase itself is a bit ambiguous, especially because it refers to the probability that no reasonable juror would. So in other words, the standard isn't actually, it doesn't just stop there at no reasonable juror would do this, but just the probability that no reasonable juror would do this. So again, I think that there's a little bit of ambiguity as to how that, what exactly the standard entails. But again, I don't think that there's any ambiguity, but it doesn't have to be definitive that we are still talking about probabilities, not certainties. The state's argument fails to reference a single case or statute to argue that this evidence is not of that kind of conclusive character. The state's argument focuses entirely on its disbelief of Mays' statement. But that's inappropriate at this stage. Of course, credibility determinations are not to be made at this stage, not to the third stage, in fact. Thus, the state never even addresses that important question, which is, assuming that this is true, what effect does it have here? Hammond's petition and the supporting evidence raise a colorable claim of actual innocence. He should be allowed to consult with an attorney and protect his claims. Questions about the credibility and strength of the evidence can and will be addressed at the appropriate stage. He asks this court to reverse the trial court in order that his need to file a petition be granted. If there's no further questions. I see none. Thank you, counsel. Mr. Williams, you may address the court on behalf of the appellee. May I please report? Counsel. My name is James Ryan Williams, and it's my privilege to represent the state in the state before this honorable court. The affidavit the defendant attached to his success at PC here was not notarized, nor was it even sworn subject to the penalties of perjury. Regarding the lack of notarization, defendant is principally relying on the decision in Allen for the proposition that the lack of notarization is not fatal at the first stage. This, however, is not the first stage. It's the success at PC, and I would guess the first of many to come. Allen, the decision in Allen seems explicitly rooted in the first stage standards. At the first stage, the court is to consider the substantive virtue and only dismiss if the petition is frivolous and patently without merit, and the lack of notarization does not prevent such a review. Success at PC, however, or post-conviction petitions, excuse me, alleging actual innocence are reviewed under a higher standard. The petitioner must show, among other things, that the evidence is so conclusive in nature that no reasonable juror would convict in light of this new evidence. So Allen is essentially an exception to the general rule that affidavits must be notarized, and given that successive post-conviction petitions are highly disfavored and subject to a higher standard, this exception should not be extended to successive petitions, especially where it's here the defendant did not even swear to the truth, or excuse me, the witness did not even swear to the truth subject to the penalties of perjury. Without the penalties of perjury, an affidavit lacks the most basic assurance of reliability. In fact, it seems that an affidavit is not really even an affidavit without being sworn. So it seems to me that the defendant is essentially asking to extend out the Allen notary exception, not just to successive post-conviction petitions, but to altogether excuse the affidavit requirement. And there's seemingly no reason to do so, because unlike finding a notary in prison, there's nothing difficult about simply swearing to the truth of a document. Without this most basic deterrent to fraudulent filings, there's seemingly nothing discouraging prisoners from repeatedly filing successive post-conviction petitions. So it's the state's position that an unauthorized, unsworn statement should not be able to provide the basis of a colloquial claim of actual innocence. Now with respect to his claim of actual innocence, it's not at all so conclusive in nature that it probably would have changed the verdict here. Basically, the defendant has come up with this fantastical story that places a gun in the hand of Mr. Alexander, one of his victims, on the night that he shot four people, killing two of them and injuring two others. This story is essentially an attempt to create evidence for his self-serving, self-defense claim for which there was no other evidence. And it comes from Mr. Sidney Mays, fellow inmate at Hill Correctional who is also serving a natural life sentence for his own triple murder. According to this affidavit or statement, if you will, Mr. Mays just so happened to be at the very same party where defendant opened fire, shooting four people, killing two of them. And at this party, Mr. Alexander allegedly flashes a gun to Mr. Mays and states that he's going to kill the defendant, whereupon Mays just thought it was best to leave. So he's not even, as your honors have discussed at length today, he's not even a witness to the actual murder. However, the next day, he goes to offer his condolences to Mr. Alexander's family. And there, an unnamed person happened to have the gun that Mr. Alexander allegedly flashed. Because he apparently or allegedly took it off of the body moments after the shooting, just before the police got there, because they responded very quickly, because it's the only thing he had to remember his friend by. While this is admittedly a creative argument, there are a number of holes in this fantastical story. He does not describe the gun, Mr. Mays, excuse me, does not describe the gun that Mr. Alexander allegedly flashed that night. He was not a witness to the murders. He does not even name the friend who allegedly removed the gun from the body. He doesn't even explain why he thinks that it's the same gun. And nothing he says actually contradicts the testimony or other evidence presented at trial. Because again, he was not a witness to the murder. Now, with respect to that evidence, I'll start first with Mr., with the defendant's self-serving self-defense claim. He claims that Mr. Alexander pulled a black revolver, that's important, at a party whereupon he fired four shots, ran. As he was running, he claims that he heard four more shots and they sounded, quote, muffled, as if they were being shot from a revolver. So then he returned four more shots. At the scene, however, investigators only found eight shell casings and two groups of four. Hence the importance of the revolver claim since revolvers don't eject shells. The problem is investigators did not find a revolver or any other game, or any other gun, excuse me. Hence the importance of the new Mr. Mays story. The problem with this is that the eyewitnesses, there were numerous eyewitnesses and none of them heard more than eight shots and none of them saw anyone else shooting or even in possession of a gun. At the risk of sounding cynical, I'm guessing this will probably be the subject of his next successive PC, finding somebody that heard more than eight shots. In addition to the numerous people who only heard eight shots and only saw one person with a gun was the recorded cell phone call where a defendant boasted about the shooting and the murder. There's the fact that he lied to investigators about knowing the victims or even being at the party. So in short, the evidence here is uncontradicted and overwhelming and it's for that reason that this miraculously convenient story provided by a triple murderer who happened to be in the defendant's same prison is not so conclusive in nature that it probably would have changed the verdict. And unless there are no further questions, thank you for your time, Your Honor. Okay, thank you. Mr. O'Brien on behalf of the public, would you like to make a final argument? I would just like to again note that a good part of the state's argument is focused on essentially, not essentially, on credibility determinations, on the unlikelihood of this, on coincidences and things being fantastical and so on. But the question is whether it's been rebutted by the record or is otherwise impossible. Beyond that, at this point, we're taking this as true. It is true that Hammond had a gun. It is true that Hammond had a gun in his hand. Sorry. It is true that Alexander had a gun and that Alexander had a gun in his hand and that he intended to shoot Hammond beforehand. So even though we don't have someone actually saying they saw Alexander shooting at Hammond just before Hammond shot, what we do have is somebody saying that they saw Hammond with a gun and that gun was in his hand. All of that essentially, that does establish Hammond's self-defense argument. Again, not conclusively. To what extent in May's affidavit, statement, whatever, refers to one of Stephen's friends who was telling him various things and talking about the gun. To what extent is any of that potentially, possibly even admissible if this case were to go back for further proceedings? It's quite, that aspect of the statement might not be admissible, but that also is not a consideration for this statement. At this stage, it's simply looking at that statement as true and questions about whether it would be admissible. We have to consider as true what May says this third party told him who doesn't even identify? I believe so at this stage. But again, all of this will be subject to further scrutiny at the second stage when presumably there would need to be a second affidavit or a second statement actually notarized and particularly at the third stage when May would be there and subject to cross-examination and have to explain all of this in much more detail before Hammond could actually expect any relief. Let me continue. I am not in favor. Okay, thank you counsel. The court will take this memorandum until I speak. The meeting will recess and issue a decision in due course.